## No. 1313.

### CLEONISE SAVOIE ET AL. VS. JULIUS MEYERS ET AL.

In case the vendor really and seriously contemplates and agrees to sell a tract of land at a price which is fixed and certain, and the vendor, while offering and proposing to buy the land, obtained also a transfer of a judgment upon the false assertion that it operates as a judicial mortgage on the land sold and in respect to which the vendor is really deceived, *held* that on appropriate allegations and proof, the transfer of the judgment may be annulled, and the amount that has been realized thereon, recovered of the vendee.

APPEAL from the Thirteenth District Court, Parish of St. Landry. Baillio. J. ad hoc.

W. S. *Frazee* for Plaintiffs and Appellants.

*Thos. H. Lewis* and *Laurent Dupre*, for Defendants and Appellees.

The opinion of the Court was delivered by

WATKINS, J. On the 12th of November, 1885, Cleonise Savoie, the widow of Zenon Broussard, acting through Louis Stelly as her agent, conveyed by authentic title to the defendants a tract of twenty arpents of land, and a certain judgment, entitled Zenon Broussard vs. Alcée Dupré, administrator of the estate of Cyprien Dupré, deceased, for the aggregate amount of $6000.

The price stated in the act is $500.

The plaintiffs in this suit are the widow and heirs of Zenon Broussard, and it has for its object the annulment and revocation of the transfer of the judgment and the recovery of the amount that has been realized by the defendants under it.

The principal averments made by the widow, Cleonise Savoie, are

substantially as follows, viz: That, really and in fact, there was no sale contemplated or made of the judgment, and that no price was paid therefor. That, previous to the execution of the act of sale, she and her agent were, by the representations of the defendants, induced to believe that there was a defect in the title to the twenty arpents of land which they proposed to buy, and that this defect consisted in a judicial mortgage resulting from the aforesaid judgment, and which had not been cancelled.

That the defendants proposed to buy the land of her for the price of $500, but they required that the judgment should be transferred to them also, in order to cure the defect of title. That they caused their lawyer to make an abstract of title, showing that this judgment had not been cancelled, and sent it to her. That the $500 was paid and received as the price of the land exclusively. That, at the time, she was near eighty years of age and necessitated to transact all of her business through an agent, and that the one she employed was a country gentleman unskilled in legal proceedings. That she and her agent subsequently discovered that they had been deceived and led into error with regard to said judgment operating as a mortgage on the land, and that the title was perfectly clear and unincumbered; but that the defendants were well aware at the time that their representations were untrue, and that same were made for the purpose of fraudulently obtaining a transfer of the judgment; and that they procured and caused the power of attorney and act of sale to be prepared in furtherance of that end.

She represents that said judgment was obtained in 1867, and had been once *revived*, and that same had been in the hands of two different attorneys without anything having been realized. That at the date of the transactions herein recapitulated, no property of the estate of Cyrien Dupré appeared on the inventory, out of which the judgment could have been realized; that neither she nor her agent knew of any; and the defendants were fully apprised of their ignorance of *such* property, and availed themselves of it to procure the transfer of the judgment.

She avers that this judgment was a community asset and owned jointly by her deceased husband and herself, and that at his death the children of the marriage inherited his share thereof, and that the only reason she transferred their interest, as well as her own, was that she regarded it as of no value. That soon after the defendants obtained the transfer of it, they procured an order for the sale of more than fifteen hundred acres of land in the parish of St. Landry, and about eighteen

hundred acres in the parish of Lafayette, as the property of the estate of Cyprien Dupré, and caused the same to be sold for near $12,000, of which they were the beneficiaries. That, at the time of the transfer, the defendants well knew of the existence of these large and valuable tracts of land, and withheld the information from her and her agent with the fraudulent purpose of getting possession of the judgment, and of realizing on it; and that they are liable *in solido* to plaintiffs, and should be condemned to pay them the sum realized, to the amount of said judgment, and interest from judicial demand.

She specially avers that the transfer of the judgment was made in error on her part, and consummated in *fraud*, and without consideration on the part of the defendants; and that, in respect to the interest of the heirs, it was otherwise a nullity, having been the sale or assignment of the property of another.

Under proper averments the heirs join their mother and allege the nullity of the sale of their interest, and specially charge fraud and deception on the part of the defendants in procuring the transfer.

They join their mother in a prayer for the annulment of the transfer of the judgment, and for the recovery of the proceeds realized under it.

Ophelia Broussard admits her signature to thè power of attorney and unites with her mother in all of her allegations. There is no demand for the revocation of the sale of the land.

*In limine*, the defendants tendered as exceptions the pleas of no cause of action and want of tender to them of the amount of the purchase price.

These having been overruled, for answer defendants aver that their purchase of the land and the judgment was *bona fide* and for a sound price. They deny any and all allegations of fraud and error, and aver that this suit was brought for the purpose of regaining what plaintiffs had lost by a bad trade.

They further aver that, at the time of this said purchase, they had no knowledge of the existence of the lands which were subsequently sold; that same had never been inventoried in the succession of Cyprien Dupré, nor had they been assessed for taxes; but that same had been ferreted out by skilled land-experts they had employed. They charge knowledge of, and acquiescence in, said sale by the heirs of Zenon Broussard, and plead same as an estoppel against them.

In the alternative they set up a demand in reconvention for moneys disbursed in attorneys' fees and other expenses incurred in searching for and procuring the sale of property of the succession of Cyprien

Dupré, the proceeds of which was applied to the satisfaction of the transferred judgment, and aggregating in amount $2711 35, and they annex a bill of particulars to their amended answer, and pray for a judgment *in solido* against the plaintiffs therefor.

On the trial of these issues there was a verdict and judgment for the defendants, and the plaintiffs have appealed.

### I.

It is perfectly obvious from the foregoing statement, that the defendants' exceptions were properly overruled. The suit does not seek to set aside the sale of the land. It remains intact. Plaintiffs' contention is that Cleonise Savoie never made a *sale* of the judgment, but merely transferred it to the defendants as the purchasers of the land, and at their suggestion and request, and in order to free the land of a supposed judicial mortgage. On this theory there was nothing due to the defendants, and no tender to be made. The sale *vel non* of the judgment is the *very* question we are to decide; and for us to say that their suit must be abated because of plaintiffs' failure to make a previous tender of the *purchase* price of its sale, would be to anticipate our own decree. Besides, there is an element of such uncertainty in the matter as to remove this from the *class* of cases in which a tender could have been successfully made.

The fact that the mother of the heirs, who made the transfer of their share in the judgment, is one of the plaintiffs in this suit, cannot affect their rights, nor can we perceive any valid objection to their being united in one suit.

They have each a common object in view. Their interests are the same. The mother makes a judicial confession of the nullity of the transfer of the judgment, and upon that score there is nothing further to adjudge. The sole remaining question is whether the transfer of the judgment was and is a nullity in respect to the defendants as the transferees.

### II

The salient facts of this case, which are necessary to be detailed, are substantially as follows, viz :

In Oct. 1885, Miss Ophelia Broussard received from A. Levy, managing partner of the firm of J. Meyers & Co. the following letter :

Miss Ophelia Broussard, Carancro, La.

Miss—Our mutual friend, Mr. Joseph Bloch, informs me that you are the owner of a piece of land on the west side of Opelousas. Please advise me at your early convenience whether it is for sale; if so, what is the lowest cash price. Awaiting your early reply, I remain, with regards,          Yours truly,                    ALPHONSE LEVY.

The defendants were informed that the land was for sale, and the cash price was $509. Defendants agreed to give $500 for the land, provided the title was good, stating that they would have their lawyer to examine the chain of title and send Mr. Stelly, the agent, an abstract of it. Within a few days the defendant, Levy, wrote Mr. Stelly the following letter, and inclosed the abstract of title therein, viz:

OPELOUSAS, LA., Oct. 21, 1885.
Mr. Stelly, Carancro, La.:

Dear Sir—My delay in answering was caused by *our* attorney making out abstract of title, copy of which I herewith enclose:

The judgment has never been cancelled, and as the original holder is now dead, the mortgage would bear until the judgment is prescribed by limitation. Our attorney advises me to get a transfer of the judgment, and that would place title beyond any further risk. I have been put to a great deal of trouble and expense lately on account of imperfect titles to lands held by us in full warranty, and hope that you will excuse me if you find me unnecessarily particular. Under the circumstances I will agree to purchase the land for $500 cash provided the judgment is transferred to me in proper form with the land.

Awaiting your reply, I remain, yours truly,

ALPHONSE LEVY.

This abstract of title contains the following data, viz: That this twenty arpent tract of land was sold in the succession of Cyprien Dupré on the 15th of January, 1873, for $830 on terms of credit, and again in 1878 for the same amount in cash. At the foot of the abstract this statement is appended, viz:

" N. B.—The judgment of Zenon Broussard against the estate of Cyprien Dupré, deceased, *has never been cancelled.*"

While this correspondence was conducted by, and the interview took place with, Levy, he was acting for his associate, Meyers, as well as himself. Indeed, there is no express denial of this.

A few days after these negotiations were concluded, Cleonise Savoie executed a power of attorney authorizing Stelly to make a transfer of the judgment and the land, and soon after he passed the authentic act of sale. To this act there was appended no certificate of mortgages. It was expressly waived. During the progress of the negotiations, the defendant, Levy, explained his seeming anxiety in respect to the sufficiency of the title to the *land*, by stating it to have been defendant's intention to construct a rice mill on the property.

It is in proof that, previous to the execution of the power of attor-

ney and title, defendants sent their attorney to see and interview the agent with reference to the purchase of the land.

On this subject the agent says : " Believing the statement of Mr. Levy in his letter, I advised the old lady to transfer the judgment, to cure the defect of title which Meyers claimed to exist." He further states that on the occasion of defendants' attorney's last visit, he left a power of attorney with him, which he had the old lady to sign, " as she was willing to sell the land and clear the title."

He says that said attorney stated to him that the one he left " was the form necessary to be followed, and that as soon as that power of attorney was signed, I could then come and pass the sale of the land and transfer the judgment." That, in a day or two afterwards, he went to Opelousas and completed the transaction, the said attorney having drawn up the act of sale.

At the time of these transactions none of the plaintiffs were aware of the existence of the lands that were subsequently sold as the property of the estate of Cyprien Dupré.  On this subject Stelly says, that if he had known of their existence, or that of other property, he would not have induced Mrs. Broussard to transfer the judgment for the purpose of clearing the title to the land.  He states explicitly that " not a cent of consideration was given for the judgment, and the only reason for transferring it, was to clear the title which Mr. Levy claimed to be defective.  The $500 was merely the price asked, and given for the land." That he exhibited and read the letters of Levy to Miss Ophelia and Mrs. Broussard, and that they all consulted together and " agreed to let the judgment be transferred to cover the defects in the title.  Neither Mr. Levy nor Mr. Meyers ever offered to buy the judgment by itself, nor have they ever spoken to me about the judgment, except in the abstract as bearing a mortgage."

He says that he has since ascertained that all the represesntations in reference to the judgment operating a judicial mortgage on the land, were untrue in point of fact, and that the title was perfectly clear.

These statements of Stelly are corroborated in every essential particular by Miss Ophelia and Mrs. Broussard.  Miss Ophelia says that she remembers that, before the sale of the land, Mr. Ogden offered $750, part cash and the rest on a credit, for the twenty arpents of land, and the offer was refused because enough cash was not offered. Other evidence in the record establishes that the land was worth more than $500.  Mr. Levy says, as a witness, in speaking of the letter he wrote Mr. Stelly, that " in making the offer of $500 *for the twenty arpents of land*, I was under the impression that the land was bounded

on the east by the railroad. *Some time after* the offer was made, and before the completion of the sale of the land and judgment, *and on inquiry*, I found that there *were intervening tracts* or lots between the railroad and the said tract. This discovery lessened, *in my mind and that of my partner*, the value of the land. We were not willing, after this discovery, to pay for the *land* the price *first* offered."

Mr. Levy did not communicate this fact, of such apparent importance, to Mr. Stelly, and he states that between the date of this discovery and the date of the sale he did not see him. Yet he accepted the title and paid the $500 originally promised for the land. The defendants' attorney, as a witness, states that Mr. Levy came to see him and requested him to go to the parish of Lafayette "in order to purchase a piece of land near Opelousas, stating in substance that he would give $500 for the piece of land, meaning, I think, 20 arpents, provided a certain judgment already attended to in this case would be transferred with the land."

This attorney was asked this question, viz:

"Q. What inducement did you offer Mr. Stelly, plaintiffs' agent, to transfer the judgment? For what purpose was the transfer made?

"A. The conversation between Mr. Levy and myself having occurred something over two years ago, I am not able to state positively the whole conversation that took place between us; but the impression that was made upon my mind was that *the cause, or one of the causes for the transferring of this judgment with the land, was in order to remove any question as to the title of the land.*"

Upon making an examination of the Levy letter addressed to Stelly, he says; "I consider that the said document embraces about the same proposition that I was instructed to make."

It appears that the judgment in controversy had never been recorded in the book of mortgages of the parish of St. Landry, and if, indeed, it had been so recorded, a judicial mortgage would not have resulted therefrom, because it was rendered against the administrator of the succession of Cyprien Dupré, and had only the effect of liquidating the debt and making it payable in due course of the administration.

Mr. L. Dupré, another attorney of the defendants, says as a witness : "I knew the judgment did *not* affect the twenty arpents of land at that time, and I never told any one that it did."

In answer to a question by plaintiffs' counsel, Mr. Dupré said :

"The conversation to which you allude, took place some two years ago. I cannot recollect any but parts of that conversation, as I have stated in my examination in chief. It is probable that Mr. Levy men-

tioned the matter of the judgment to me. I know he seemed very anxious as to the title of the land." The question under consideration was the abstract of title, and that date and instrument were referred to.

It appears from the evidence that defendants were at, and previous to the date of the sale in controversy, engaged in a mercantile business in the city of Opelousas, and devoted considerable attention to land speculations and investments in that vicinity. It appears that, notwithstanding the objections urged by the defendants to the want of proximity of the land to the railroad, they accepted the title, paid the $500 in cost, and entered into possession thereof, but nothing further is heard of the erection of a rice mill thereon. They subsequently sold the land. Their attention appears to have been *immediately* directed to the collection of the judgment. Another lawyer was consulted and employed with that view. The services of experienced land-experts *were at once* secured in pursuit of same object.

On the 2d of December 1885—only twenty days after the transfer—the defendants, acting through their recently employed counsel, filed a petition in the District Court of the parish of St. Landry, in which they represent themselves to be the transferors of said judgment, on which there is a balance remaining due of $6000 and that they are entitled to have same executed. They represent that there is property which still belongs to the estate of Cyprien Dupré, "*some* of which is situated in the parish of St. Landry, and which should be sold to satisfy said judgment as far as it will go."

To this petition there is appended a list of the lands referred to. Reference to the list shows that there were 1552 44-100 acres. That all of them were entered at the Land Office in April and May 1860, and are situated in townships seven and eight, and ranges two and three.

On the same date an order was granted for their sale for cash, and same were sold on the 6th of January, 1886, with the exception of one small lot, to A. Levy & Co. for $3100. On the 11th of January, 1886 —only five days after the foregoing sale—the same parties filed another petition and procured another order for the cash sale of other lands of the estate of Cyprien Dupré, situated in the parish of Lafayette, a list of which is appended thereto. An examination of it discloses that all of these lands were likewise entered in April and May, 1860, and are situated in townships ten and eleven, and ranges three and four. Of them there are 1805.46 acres. On the 17th of February, 1886, there were sold and adjudicated to A. Levy & Co. a sufficient quantity of these lands to aggregate the sum of $2435.40,

and to another party $168.68, and leave remaining unsold 798 acres. By these two sales there was yielded the aggregate amount of $5696.08, less the expenses of sale, and within *less than three months from the date of defendant's acquisition of the judgment.*

Leonce Littel testifies that he was employed by Alphonse Levy, one of the defendants, *on the 21st of November,* 1885, as a surveyor, to locate the lands which were situated in St. Landry parish—those above mentioned. He says: "I returned on the evening before Thanksgiving day (November 25, 1885,) *after having spent three days in locating said lands.* * * At the time he employed me he told me that I need not mention for whom I was locating the lands. The lands in said list are not worth less than three dollars per acre, average cash valuation."

He says that "most of said lands are good and cultivable." The gentleman who abstracted the titles of the lands which were sold in St. Landry states that he was employed by the defendants on the 13th or 14th of November, 1885, only a day or two after the transfer of the judgment.

In the month of December following he visited the Parish of Lafayette and abstracted the titles to the land sold in that parish in the month of February, 1886.

There are many other facts and circumstances which might, with equal propriety, be given a place in this opinion, as having an important bearing on the issues involved, but those already cited are quite sufficient to determine the validity of the sale.

### III.

To much of this testimony the defendants objected, and excepted to the introduction of same in evidence; and particularly to that part of it tending to contradict, or explain the recitals of the act of sale and transfer, in respect to the consideration, on the ground that there was no allegation in plaintiffs' petition charging that such recitals were made in error. We are of a contrary view. There are several allegations which we have quoted, directly to the effect that Mrs. Broussard never sold or transferred the judgment for any consideration; that none was offered or paid by the defendants; and that the $500 mentioned in the deed as the price thereof, was the price of the land, *exclusively.* These averments were ample, and quite sufficient for the attainment of the object aimed at. The testimony was properly admitted to the jury.

## IV.

The defendants' counsel urgently press upon our attention, what he considers a fatal defect in the initiatory proceedings—the want of a proper default, or putting *in mora,* upon the theory that this is in the nature of an action of damages *ex quasi contractu,* for the passive violation of a contract. But, 'in this, we feel bound to disagree with the learned counsel, for whose views we have the greatest respect. This is in no proper or legal sense an action of damages. It is a suit for the proceeds of the sale of property of the succession of Cyprien Dupré, which were applied to the satisfaction of the judgment in controversy, and which were illegally in the possession and under the control of the defendants, and who unduly received the same. In such case the want of a previous amicable demand should have been excepted to previous to default; after answer, such a plea is unavailing.

## V.

It is quite unnecessary for us to protract this opinion for the purpose of summing up, discussing and making an application of the facts herein enumerated. No useful purpose would be attained by commenting on the motives which influenced the actions of the defendants, their agents and employees in the premises. It will suffice for us to state our conclusions in reference to the matter in hand.

They are, that it was the sole object and purpose of Mrs. Broussard to sell the twenty arpent tract of land to the defendants for the stipulated price of $500. That it was the *real* purpose of the defendants to surreptitiously obtain the control of the judgment with the view of realizing on it as they did, and the possession and acquisition of the land was a secondary consideration with them. That when Levy stated in his letter addressed to Stelly, on the 21st of October, 1885, " that the mortgage would bear (on the land) until the judgment is prescribed by limitation," he must have known, as his attorney, Laurent Dupré, did, that there was no mortgage resting against the land, and, knowing this, he must have intended to create a false impression upon the agent's mind, as it did. That at the time of the transfer to the defendants, and before, they were fully advised of the existence of the lands of the estate of Cyprien Dupré which they caused to be sold soon after, and their value and availability constituted the motive for the acquisition of the judgment.

That Mrs. Broussard and her daughter and agent, were not aware of their existence, and had no convenient opportunity of ascertaining

Savoie et al. vs. Meyers et al.

it. That, considering that the gratuitous transfer of the judgment was the result of artifice, and misrepresentations of the defendants, which snperinduced error on the part of Mrs. Broussard, and which, if sustained, would cause the plaintiffs great injury, same should be annulled.

The Code declares that "fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, CREATED of CONTINUED BY ARTIFICE, with design to obtain some unjust advantages to the one party, or to cause an inconvenience to the other." R. C. C. 1847.

Not only should the transfer of the judgment be annulled and set aside, but the defendants' should be *sentenced* to make restitution or the amounts they have received.

But justice demands that the plaintiffs should allow such reasonable sums as may have been necessarily expended in the search, recovery and sale of the land.

But upon a careful examination of defendants' bill of particulars, and the evidence adduced in support of same, we are of the opinion that some reductions should be made, and the following is a list of items that are disallowed or diminished, viz :

| | |
|---|---|
| The price of the land, disallowed | $ 500 00 |
| Clerk's fees and cost in Lafayette, disallowed | 81 35 |
| Surveyor's fees, diminished by | 150 00 |
| Services of C. C. Duson, disallowed | 300 00 |
| | $ 1031 35 |

Total amount of reductions, aggregating one thousand and thirty-one and 35-100 dollars. This amount being deducted from the total credit claimed, $2,711 35, will produce us the true amount of credit to which the defendants are entitled, viz : $1680.

There is another item of credit claimed on the bill of particulars, viz : "Deduct 40 acres sold in error, $60 00; and 160 acres in dispute, $723 69=$783 69." The proof on this question is not quite clear, and, for the purposes of justice, we will not conclude either party, but allow the credit, reserving the rights of the plaintiffs in another suit.

| | |
|---|---|
| We find the amount realized to be | $5,696 08 |
| Amount to be deducted | 1,680 00 |
| Amount to which plaintiffs are entitled | $4,016 08 |

One half of this sum is due to the plaintiff, Cleonise Savoie, and the residue to the heirs of Zenon Broussard jointly and in indivision—the whole sum to bear legal interest from judicial demand.

On the whole this is not such a case as should make the verdict of the jury of peculiarly binding force. It is stated to be a fact that the trial was a protracted one; many witnesses were interrogated in their presence; numerous deeds and documents were offered in evidence; and many perplexing questions of law are involved. There is no very serious conflict of testimony. Under these circumstances the jury may well have been misled as to the determinative facts, or decided the case under a misapprehension of the law. We deem it our duty, under a solemn conviction of the justice and equity of the plaintiffs' demands, to set their verdict aside and proceed to render a different judgment.

It is, therefore, ordered, adjudged and decreed, that the verdict of the jury and the judgment of the court *a qua* thereon based, be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that the sale and transfer of date November 12, 1885, in so far as the same purports to transfer and convey to the defendants the judgment in controversy, be and the same is annulled and set aside; and it is further ordered, adjudged and decreed, that the plaintiffs do have and recover of and from the defendants *in solido* the sum of five thousand six hundred and ninety-six and eight one-hundredths dollars, with legal interest from the 14th of July, 1886, same being the date of judicial demand, subject to a credit of the sum of one thousand six hundred and eighty dollars.

It is further ordered, adjudged and decreed, that the plaintiffs' rights be reserved to claim the sum of $783 69, as above specified, and which has been allowed to defendants as a credit.

It is further ordered, adjudged and decreed, that all costs of both courts be taxed against the defendants and appellees.

## On Application for Rehearing.

Counsel have confined their application to alleged errors in the calculations made in our opinion and make claim for an increased allowance on defendants' reconventional demands.

1. An examination of the figures has disclosed one error, and that consists in our having taken as the basis of our calculation the amounts stated in the *proces verbals* of sales. We think that was wrong. We now take the amounts stated in the defendants' bill of particulars, which shows the net balance after costs have been deducted, viz:

Proceeds of sale in St. Landry...................$2997 30
Proceeds of sale in Lafayette .................... 2451 68—$5448 98
In *lieu* of our *former* balance............................... 5696 08

Difference .............................................$ 247 10

Savoie et al. vs. Meyers et al.

2. We do not consider the item of $81.35 *established* by the evidence. It forms no part of the cost of the sale of land in Lafayette parish.

3. With regard to the item of $150 deducted from the surveyor's fees, his own receipt only shows that he received $50, and the parol evidence does not satisfy us that the defendants *paid* any more for *that* service.

4. We think the deduction of $300 from Mr. Duson's claim is but equitable and just. The only proof of the amount defendants paid him is his receipt. It is for $860 " in full for services rendered in ferreting and locating properties belonging to the estate of Cyprien Dupré, said lands being situated in St. Landry, Acadia, Lafayette and Vermilion parishes, *and for general services in the Baudoin case, and attending to the matter of Severin LeBlanc;* all *pertaining* to the succession of Cyprien Dupré.

(Signed) " W. W. DUSON."

He was not summoned or sworn as a witness. No explanation is furnished of the character or nature of the services he rendered. It appears that no land was *found* or *sold* in Acadia, or Vermilion parishes. It does not *appear* what connection there is between the transactions under consideration and " the Baudoin case" or " the matter of *Severin* LeBlanc." Considering the absence of proof, we think $500 a liberal allowance.

The opinion allows a credit of $1680. We will allow $247 10 in addition—$1927 10. This, we submit, is quite a large allowance for the collection of $5448 98, particularly when the whole work was accomplished in less than ninety days, and through *ex parte* proceedings. But of this sum, $247 10, there has been carried into the calculation made by us the sum of $60, as shown by defendants' application. It must be deducted. The additional credit will then be $187 10. But a rehearing is unnecessary.

It is, therefore, ordered, adjudged and decreed, that our former decree be and the same is corrected by allowing the defendants the additional credit of one hundred and eighty-seven and ten one-hundredths dollars, and as thus corrected and amended it remain undisturbed.

But inasmuch as we have made one reservation in behalf of the plaintiffs, we also reserve the defendants' right to sue for the items that are disallowed, viz: $81 35, $150 and $300, aggregating $531 35; but this reserve is not to affect the finality of our decree.

Rehearing refused.